Joseph D. Steward, III (337385)
Kimmel & Silverman, P.C.
811 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 215-540-8888 x 134
Facsimile: 215-540-8817
jsteward@creditlaw.com
teamkimmel@creditlaw.com

Craig T. Kimmel (*pro hac vice* anticipated)
Jacob U. Ginsburg (*pro hac vice* anticipated)
30 E. Butler Ave.
Ambler, PA 19002
kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NICHOLAS IHRKE,** *on behalf of himself and all others similarly situated*<br><br>*Plaintiff,*<br><br>v.<br><br>**PRESIDIO INTERACTIVE CORPORATION d/b/a HealthMatchUp,**<br><br>*Defendant.* | **Case No.:** 3:22-cv-05262 |

## COMPLAINT

Plaintiff, NICHOLAS IHRKE (hereinafter referred to as "Plaintiff", "Mr. Ihrke" or "Ihrke"), individually, and on behalf of all others similarly situated, and

- 1 -

demanding a trial by jury, brings this action against PRESIDIO INTERACTIVE CORPORATION d/b/a HealthMatchUp, (hereinafter referred to as "Presidio" or "Defendant") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. In support of this Complaint, Plaintiff, individually, and on behalf of all others similarly situated, asserts as follows:

## BACKGROUND:
## TELEMARKETING AND THE TCPA

1.      In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

2.      The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry and nonetheless received telemarketing calls for which they did not expressly consent.

3.      In 2019, the FTC received over 5.4 million complaints from US residents about unwanted calls. FTC: *What Do Not Call Complaints are telling us* (Oct. 17, 2019), *available* at https://www.consumer.ftc.gov/blog/2019/10/what-do-not-call-complaints-are-telling-us.

4.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls.  For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, (March 28, 2019) available at:     https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## THE PARTIES

5.     Plaintiff and putative class-representative, Nicholas Ihrke, is a natural person and adult, who at all times relevant hereto, resided in Rochester, Minnesota 55902.

6.     Defendant is a marketing company that, *inter alia*, matches prospective consumers with health insurance policies.

7.     Defendant maintains its principal place of business, head office, or otherwise valid mailing address at 3450 Sacramento Street, Suite 343, San Francisco, California 94118.

8.     At all times relevant hereto, Defendant acted through its agents, employees, vendors and representatives.

9.      Plaintiff brings this Action in his individual capacity and on behalf of all other similarly situated seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant in negligently, knowingly, and/or willfully contacting Plaintiff and other Class member on their cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. and related regulations specifically the National Do-Not-Call provisions.

## JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

11.      Furthermore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interests and costs.

12.      This Court has personal jurisdiction over Defendant, as it maintains its headquarters in the State of California.

13.      Furthermore, Defendant does business and maintains its headquarters within this District.

14.    Accordingly, personal jurisdiction exists. Furthermore, this venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## THE AFFIRMATIVE DEFENSE OF EXPRESS WRITTEN CONSENT AND CLEAR AND CONSPICUOUS DISCLOSURE

15.    In a TCPA claim, "whether or not express consent is given is not an element of the claim, but is instead 'an affirmative defense for which the defendant bears the burden of proof.'" *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. December 28, 2007).

16.    In its regulations promulgating the TCPA, the FCC provides that a telemarketer can call a consumer whose number is on the Do Not Call registry if:

> it has obtained the subscriber's prior express invitation or permission. **Such permission must be evidenced by a signed, written agreement between the consumer and seller** which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed

47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added).

17.    Over a decade ago, the FCC warned telemarketers without equivocation:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a **clear and conspicuous disclosure was provided and that unambiguous consent was obtained.**

See 27 FCC Rcd 1830 at ¶26, 32, 33 (Feb. 12, 2012).

18.     In recent years, courts have rejected attempts by telemarketers to establish "express written consent" where the telemarketing consent language was overshadowed and obscured by distracting and enticing images distinct from the telemarketing/data-mining purposes of the transmission of data, on the grounds that the "consent" did not contain a clear and conspicuous disclosure.[1]

19.     In *Trim v. Mayvenn*, Inc., 2022 U.S. Dist. LEXIS 63222; 2022 WL 1016663 (N.D. Cal. April 5, 2022)· the Northern District of California applied the common-sense principal from the Telemarketing Sales Rule that a telemarketer could not rely on a sweepstakes entry to obtain "existing business relationship" exemption to the Do Not Call registry. *Id.,* at 5-6 ("the Court holds that Mayvenn may not 'circumvent the [NDNC] Registry by utilizing [Trim's] sweepstakes entry as a way to exploit the [EBR] exemption").

## PLAINTIFF, PRESIDIO AND THE "MAJORSWEEPS" WEBSITE

20.     Mr. Ihrke has learned that his name, phone number and personal data was allegedly entered on a sweepstakes website "majorsweeps.com" on or around May 19, 2020, and subsequently transmitted to Presidio.

21.     The "MajorSweeps.com" website is and at all times relevant, was, owned by SBG Media Enterprise LLC.

---

[1] *Sullivan v All Web Leads, Inc.,* No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232 (N.D. Ill. June 1, 2017); *Anand v. Heath,* No. 19-CV-00016, 2019 U.S. Dist. LEXIS 109076 (N.D. Ill. June 28, 2019); *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849 (9th Cir. 2022) (*Berman* was a TCPA matter where the disclosure at issue was not addressed in the context of consent to receive telemarketing calls but agreement to arbitrate).

CLASS-ACTION COMPLAINT

22. During May of 2020, the MajorSweeps website contained large all caps font over a red and blue background, reading "ENTER FOR A CHANCE TO WIN $12,000.00 IN CASH & MONTHLY PRIZES", with "$12,000.00" in gold font, larger than the remainder of the text. *See* image below; See Ex. A, MajorSweeps.com web archive printout.





CLASS-ACTION COMPLAINT

23.     To the right and below the large bold and colorful sweepstakes language, in small inconspicuous font, there was fine print stating "by checking this box, you agree to our Terms of Service and Privacy Policy, as well as our Official Rules." Ex. A; *see also* image above.

24.     The "Terms of Service", "Privacy Policy" and "Official Rules" were all hyperlinked to distinct pages.

25.     A person could not enter the "sweepstakes" without checking the aforementioned box, which purports to reflect acquiescence to the Terms of Service, Privacy Policy and Official Rules.

26.     Where a user would click the "Privacy Policy" hyperlink, the user would be taken to a distinct webpage detailing the "Privacy Policy" for MajorSweeps. The Policy provided in relevant part

**Use of Personal Information:**

By submitting your personal information by and through the Site Offerings, you agree that we may share, sell, rent, lease or otherwise provide that personal information to any third party for any purpose permitted by law, and we may work with other businesses to bring selected retail opportunities to our Users. These businesses and third parties may include, but are not limited to: (a) providers of direct marketing services and applications, including lookup and reference, data enhancement, suppression and validation; (b) e-mail marketers; (c) telemarketers (where permitted by applicable law); and (d) direct marketers.

*See* Ex. B, MajorSweeps Privacy Policy, web archive, p. 1.

27.     Presidio was (and as of the filing of the Complaint, still is) among the "third-parties" who send telemarketing messages to persons purported to have entered the "MajorSweeps" sweepstakes.

28.     Presidio claims it had Mr. Ihrke's express written consent to place telemarketing calls to his cell phone from a purported submission to "MajorSweeps.com" on May 19, 2020, containing, *inter alia*, Ihrke's name and phone number.

29.     While Mr. Ihrke disputes that he entered his name and phone number on the "MajorSweeps" website, that is ultimately inapposite to the question of telemarketing "consent."

30.     Even if Ihrke *did* submit the form online, Presidio could not prevail on its affirmative defense of express written consent, as a matter of law.

31.     The "MajorSweeps" website does not provide a clear and conspicuous disclosure to the website visitor as to the telemarketing purpose of the site, therefore could not be the mechanism for a telemarketer to obtain express written consent.

32.     Rather, the hyperlink containing the TCPA "consent" language is in fine print and deliberately overshadowed and obscured by the distracting and enticing images of "sweepstakes" and money.  That is by design.

33.     Accordingly, Presidio cannot prevail on its affirmative defense of express written consent for any person it called whose data/phone number was submitted on the "MajorSweeps" website.

## Presidio's Telemarketing Calls to Mr. Ihrke

34.     At all times relevant hereto, Plaintiff, Nicholas Ihrke was the owner of a cellular phone, the number for which was (507) XXX-7140.

35.     The aforementioned cell phone was used by Ihrke for primarily residential purposes.

36.     Plaintiff registered that phone number on the National Do Not Call Registry on or around December 2019.

37.     Plaintiff did so to obtain solitude from invasive and irritating solicitation calls.

38.     For purposes of background, Mr. Ihrke had, at all times relevant hereto, excellent health insurance benefits through his employer.  Accordingly, Ihrke would not have knowingly or willfully opted in to receive telemarketing calls about health insurance.

39.     Mr. Ihrke began receiving calls and voicemails from Defendant beginning in or around May 2020, which were made for the purpose of soliciting health insurance he did not want or need.

40. At no point did Mr. Ihrke express interest in procuring health insurance prior to the telemarketing campaign.

41. Defendant's phone calls to Mr. Ihrke utilized an automatically generated and/or pre-recorded voice.

42. For instance, Plaintiff received several identical voicemails utilizing the same pre-recorded messages disclosing that the call was from "HealthMatchUp.com" and providing a call-back number.

43. Defendant placed at least nine (9) calls to Plaintiff's telephone soliciting health insurance.

44. A non-exhaustive list of the offending phone calls placed by Presidio to Plaintiff is below:

| Date: | Caller ID: |
| --- | --- |
| May 19, 2020 | 507-204-5564 |
| May 19, 2020 | 507-204-5655 |
| May 20, 2020 | 507-203-2786 |
| May 21, 2020 | 507-315-4300 |
| May 21, 2020 | 507-357-1903 |
| May 22, 2020 | 507-778-9291 |
| May 22, 2020 | 507-238-4487 |
| May 22, 2020 | 507-203-2389 |
| May 26, 2020 | 507-204-2441 |

45. Upon information and belief, Defendant placed additional calls not listed in the chart above.

46. Defendant's telephone calls were not made for "emergency purposes" but for telemarketing purposes.

47. Plaintiff found Defendant's repeated calls annoying, frustrating, upsetting, harassing, and an invasion of his privacy.

## Class Allegations

48. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. commonality, typicality, and adequacy of representation.

49. Each person called by Presidio whose number was transmitted through the "MajorSweeps" website did not provide express written consent upon a clear and conspicuous disclosure.

50. Accordingly, Defendant placed a high volume of calls to numbers listed on the Do Not Call Registry without consent or an existing business relationship.

51. Plaintiff seeks to represent the following classes:

**227(b) Class:** All persons in the United States to whose cellular telephone numbers Defendant called using prerecorded or artificial voice whose number was transmitted to Presidio from the "MajorSweeps" website from four years prior to the date of the filing of the original lawsuit to the date of class certification.

**227(c) Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) subscribe to cellular telephones; (2) received more than one telephone call or text message from Defendant on that phone during a 12-month period; and (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls were received where the person's phone number was transmitted to Presidio from the "MajorSweeps" website.

52.     Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

53.     The members of the proposed classes are so numerous that joinder of all members is impracticable.   Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions.   The names and phone numbers of the numbers of the proposed class are readily identifiable through records available to Defendants.

54.     Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

55.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members.   The questions of law and fact common to the proposed class include,

but are not limited to, whether Defendant called phone numbers that were registered on the Do Not Call Registry and whether such calls violate the TCPA.

56. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

57. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class he seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Plaintiff's counsel has the resources to litigate this class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserves the right to join other unnamed class members into this lawsuit.

58. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural

mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

59.     In contrast to numerous individual claims, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

60.     Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry, predominate over questions affecting only individual members.

61.     Defendant has acted or refused to act in accordance with the relief sought by these classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)

62.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

63.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party

to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

64. Upon information and belief, Defendant initiated multiple calls to the telephone numbers of Plaintiff and the putative class members using an automatically generated or prerecorded voice.

65. Defendant's calls to Plaintiff and the putative class members were not made for "emergency purposes."

66. Defendant's calls to Plaintiff and the putative class members were without Plaintiff's prior express consent.

67. Upon information and belief, Defendant placed prerecorded voice calls to hundreds if not thousands of telephone numbers.

68. Defendant contacted Plaintiff and the putative class members despite the fact that their telephone numbers were on the Do Not Call Registry.

69. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights or the rights of the putative class members under the law and with the purpose of harassing Plaintiff and Class members.

70. As a result of the above violations of the TCPA, Plaintiff and the putative class members have suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

WHEREFORE Plaintiff Nicholas Ihrke, individually and on behalf of all others similarly situated, request the Court grant the following relief:

    a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ihrke as the class representative;

    b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;

    c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendant willfully violated section 227(b) of the TCPA;

    d. Enter judgment in favor of Plaintiff and the class members enjoining Defendant from placing calls or leaving messages utilizing an automatically generated or pre-recorded voice;

    e. Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration;

    f. Award Plaintiff and the class members all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees; and

    g. Award Plaintiff and the class members such further and other relief the Court deems just and appropriate.

## COUNT II
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(c)(5)

71. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

72.     The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

73.     The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

74.     In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

75.     Where Defendant placed calls to the telephones of Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendant violated the TCPA, including but not limited to, 47 U.S.C. § 227(c)(5) and the TCPA's corresponding regulations.

76.     Defendant knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

77.     Defendant did not obtain valid express written consent from the called parties.

78. Plaintiff and putative class members are entitled to damages of $500.00 per violation for each call and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

WHEREFORE Plaintiff Nicholas Ihrke, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23 *et seq*., certifying this action as a class action and appointing Plaintiff as the class representatives;

b. Enter an order appointing Kimmel & Silverman as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendant willfully violated section 227(c)(5) of the TCPA;

d. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling numbers registered on the National Do Not Call Registry;

e. Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and

f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

CLASS-ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, NICHOLAS IHRKE, and all other similarly situated demand a jury trial in this case.

Respectfully submitted,

By: */s/ Joseph D. Steward*
Joseph D. Steward, III, Esq. (337385)
Dated: September 14, 2022
Kimmel & Silverman, P.C.
811 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 215-540-8888 x 134
Facsimile: 215-540-8817
jsteward@creditlaw.com
teamkimmel@creditlaw.com